Good morning. May it please the Court, Ken Sansone on behalf of the Appellant, City of Pomona. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. Right. Thank you, Your Honor. This appeal presents a straightforward issue of California law. Does the manufacturer of a product that is defective because the risks of its design outweigh the benefits of its design escape liability for the harm that a jury has found that design caused merely because those risks were unknown to the manufacturer at the time the product was in use? Now, the California Supreme Court has emphatically and repeatedly answered no to this very question, holding that the benefits and risks of a product's design are to be judged in hindsight. This standard, as the State High Court has repeatedly recognized, subjects manufacturers to risk of their product's designs that they have not discovered and could not have discovered at the time the product was manufactured and holds them responsible for unforeseeable harm from those designs. As the California Supreme Court has also repeatedly explained, it is this very feature of the California design defect standard which serves to distinguish in this state strict product's liability from negligence. As Barker v. Lull Engineering teaches, acting as a reasonably prudent manufacturer would have, under the circumstances, may defeat a negligence claim, but not a strict liability claim if upon hindsight. In other words, not under the circumstances that existed when the product was designed, but under the circumstances prevailing at the time of the trial, the jury concludes that the risks of the design outweigh the benefit of the design. That's controlling California law. Here, in its jury instructions, the district court inverted this controlling California standard and instructed the jury to consider the risks of the design at the time the product was in use and to find for the defendant if the jury found that the benefits of the product's design outweighed the risks of the design at the time the product was in use. The district court added this risks at the time the product was in use language, which doesn't appear in Barker or any of its progeny, to the model California design defect jury instruction in two places and also added that same language to the verdict form itself. The district court took its red pen to these model instructions and the verdict form at the defendant's request, but over the city's repeated objections and without giving any explanation for it whatsoever. Has there been any case since Barker where a court has applied that hindsight language to hold a company strictly liable for risks that it couldn't have known, you know, decades ago? Yes, Your Honor. There are two cases discussed in our brief. There is the Sternhagen case where a manufacturer of a pesticide that the defendant was, the plaintiff was exposed to back in the 1940s and 1950s, before the carcinogenic properties of that pesticide were known or could have been known, was allowed to recover in strict liability for that defectively designed pesticide. And there's another case, the Green v. Smith and Nephew case, also discussed in our reply brief, where a plaintiff nurse who was exposed to latex gloves beginning in the 1970s and as a result developed a latex allergy was allowed to recover, again, in strict liability for design defect, even though it was undisputed in that case that the possibility of a latex allergy, from latex gloves, was not known back in the 1970s. And again, that is the very essence of strict products liability under California law and that same standard is followed in numerous other jurisdictions as well. So both of those, neither one of those cases is a California case, right? One's from Wisconsin, one's from Montana. That's correct, Your Honor. Are there California cases that you were able to find that would be responsive to Judge Lee's question? No. Or any that would go the other way, I suppose? No. Well, there aren't any that go the other way, certainly. There are no California cases that support the jury instruction that was given by the district court in this case that can find the jury's consideration of the design risks of a product to the time the product was in use. That language doesn't appear in any of the cases that are cited by SQM in its brief in this matter, and it appears to have been constructed out of whole cloth. And certainly there's no room in either the logic or the policy rationale of Barker, which, again, was a case where the California Supreme Court explained, what we are doing here is setting out the standard for strict products liability that will be followed in this state. There's no room in Barker for some sort of exception for a product just because that product was made a long time ago when the risks of a particular design feature of the product were not known. And, again, if hindsight means anything, it means applying what we know now to events that happened in the past. Hindsight is 20-20. We all know that. And that's exactly the standard that Barker adopted, and Barker explained why it was adopting this standard. And that is to further the policy that the California Supreme Court has identified, that when you have an innocent plaintiff who's been injured by a defective product, that innocent plaintiff should be able to recover, even if it's against an innocent manufacturer who also did not know about the defect in the product. So I'm interested in trying to get a handle on how this instruction gets applied, you know, by a jury in practice. So if you take out the language that you're objecting to. Which would result in the model instruction. Yeah, and you've got these six factors down there. Some of the factors, one of them expressly talks about the time of manufacture, feasibility of an alternative, safer design at the time of manufacture. That's correct. Some of the other ones look like they might be read that way. Likelihood that this harm would occur. When's that measured? The likelihood that the harm would occur is measured at the time of trial. Again, the likelihood that an event will occur is independent of what anybody knows about that likelihood. And knowledge of the likelihood that the risk would occur cannot be confused with the absolute likelihood that the risk would occur. If that's the way that instruction, and if that's the way Barker is read, then what Barker is doing is exactly the opposite of what the California Supreme Court said it was doing in Barker, which is creating a negligence standard. It is allowing the jury to consider whether the manufacturer knew or should have known about the likely risks of its product design at the time the product was manufactured. So in those six factors, would the only one that you'd look at as of the time of the manufacture of the product be the third one, feasibility of an alternative, safer design at the time of the manufacture? That's correct, Your Honor. And not coincidentally, that's the factor in the model California jury instruction that actually contains that language. Feasibility, and we are not contesting this. Feasibility is to be measured at the time of manufacture. So even under your interpretation, the manufacturer gets to put in evidence that in the 1940s or the 1930s or whatever, it really wasn't feasible to do this. That's correct. And SQM put on some of that kind of evidence in this case. And as the court is aware from the briefs, we also put on a good deal of evidence about the feasibility of redesigning this fertilizer so that it contained a lower concentration of perchlorate, as was embodied, in fact, by, and this is just one of the pieces of evidence in the record on this point, a patent that had been issued prior to the 1930s and 1940s, which is when, again, the jury found the fertilizer manufactured by SQM and used in Pomona and ended up contaminating the groundwater, that patent allowed the perchlorate concentration in the fertilizer to be reduced by two-thirds from the perchlorate concentration of the fertilizer that was actually being produced at that point. And there was testimony from our geochemist, our geochemical expert, that had that been done, that the levels of perchlorate in Pomona's groundwater today would be safe. They would not be in excess of the level that the State of California deems unsafe. Going back to the jury instructions, Model Jury Instructions C, which said the feasibility of an alternative, safer design at the time of manufacture. So you agree that. You look at the time of manufacture. That's right. Then Factors D and E are the cost of an alternative design and disadvantages of an alternative design. Shouldn't they also be looked at the time of manufacture? I mean, it would seem odd that you look at Factor C, feasibility of an alternative design at the time of manufacture, but then look at the cost and disadvantages much later. No, I don't disagree with that, Your Honor. Again, there will be evidence in these cases, as there was in this case, about an alternative design, and part of that evidence will be what that would have cost at the time the product was manufactured. And that's fine. But, again, that lens shouldn't be taken and used to view a factor, which is not even a factor at all under Barker, and certainly is not to be viewed as at the time of manufacture. And that is the manufacturer's awareness of the risks of that design. Again, that is to be viewed in hindsight. And that's what the California court has repeatedly said. It said that as recently as just last year in the Kim v. Toyota case. And, again, there was an issue in Kim, and SQM relies heavily on Kim in its brief, about the admissibility of industry standards at the time of manufacture. And the California Supreme Court ruled that under certain circumstances that could be admissible because it goes to feasibility. It goes to the preventability of the risk at the time the product was made. But nowhere in that case is there any discussion that, well, we should also consider whether the manufacturer knew of the risk when we're considering whether the manufacturer was capable of preventing the risk. So is that really what you see as the key problem with the instruction, that the added-on language brings in the concept of awareness of the risk at the time? Absolutely, Your Honor, as did defense counsel's closing argument to the jury, during which he displayed for the jury the jury instruction and the verdict form and emphasized this at the time the product was in use language, which appeared in several places there, and expressly argued to the jury, the conduct of my client needs to be judged from the time the product was made, and at that time there was no knowledge of risk of health hazards from perchlorate contamination of groundwater. That is the fundamental problem with the jury instruction. That problem was exploited and caused grave prejudice to my client, the city of Pomona. And, again, that standard is simply the opposite of the hindsight standard under California law. Would you support certifying this question to the California Supreme Court? I know there is a language, hindsight, in the Barker case, but it's a bit ambiguous. This isn't a statute. We don't read judicial opinions like a statute. I know you've cited Brown, Carlin, and Curl that cite the hindsight language, but in many ways they're trying to avoid that language. And given the lack of case law on this, I mean, would you support certifying this to the California Supreme Court and have it clarify what they exactly meant by the word hindsight? My simplest and most direct answer to that question, Your Honor, is, in principle, the city of Pomona has no objection to certification in this case. As a practical matter, this is a case, as this Court is aware, that's been around for a very long time. It's been 10 years now since this case has been filed, and the city of Pomona still has not had a trial in this case that was conducted according to the applicable procedural and the binding substantive California state law that applies here. Now, again, my position is, as I've articulated repeatedly, that Barker is very clear that this is exactly what strict products liability is. This is exactly what hindsight means. Hindsight couldn't possibly mean anything else. And among other evidence that Barker meant exactly what I'm saying it meant was that it's cited extensively and relied heavily on an article by Professor Wade. And Professor Wade explains in that article that the way this all works is that knowledge of the product's risks is imputed to the manufacturer up through the time of trial. And that's the way that the courts of many other states have explained strict products liability for design defects, and that's the way, as Your Honor just alluded to, the California Supreme Court, in refusing to extend strict products liability in certain other kinds of cases, has explained strict products liability works. For example, in Brown, the California Supreme Court said that for policy reasons, because these are life-saving drugs, we're not going to extend strict products liability to them. And why aren't we going to do that? Because strict products liability holds manufacturers responsible for unforeseeable product risks, and we don't want to do that in the case of prescription drugs. And it was the same thing in Carlin, where the question was about failure to warn. And in Carlin, the court, again, drew this distinction between a failure to warn claim, which does require evidence that the risk was known or knowable at the time the product was sold, from a strict product liability claim for design defect, which does not require that evidence. Do you know how long this patent instruction has been out there? I mean, I know they don't have the force of law, and I'm just curious. Do you know how long it's been, this formulation of it? I apologize, Your Honor. I can't answer that question, but it's since at least 2013, I think, was the edition that we cited to the court. And, again, it simply tracks the language of Barker. And, you know, I certainly appreciate Your Honor's observation that these don't have the force of law, but these are the instructions that are typically used in state and federal trial courts when we have, as we had here, a district court sitting in diversity and applying California law. And, you know, there certainly wasn't any argument from SQM or any observation by the district judge that this instruction, which is widely used, is wrong. And it's not. It's completely consistent with Barker. What's wrong is to add language to that instruction, which artificially cabins the jury's frame of reference to the time the product was in use, which, of course, in this case was 70 years ago. I'd like to, if I may at this point, address some of the additional issues in this case. The first is the harmless error argument. Again, this was a civil case. There was an erroneous jury instruction given. It's the law in this circuit, of course, that in that situation the erroneous instruction is presumed to be prejudicial and the appellee has the burden of overcoming that presumption. SQM has not done that here. Again, when the risk-benefit test is properly applied, there is no artificial restriction to this time frame. At the time the product was in use for purposes of assessing the risk, instead you have the factors under Barker that we've talked about. And, again, it's quite likely that when perchlorate is contained in fertilizer, which is designed to be used and was used by spreading it on the ground and pouring water on top of it, that the perchlorate from that fertilizer will get into the groundwater. Perchlorate, as this court has observed in its prior decisions in this matter, is quite dangerous. It interferes with thyroid function, particularly in babies and young children, and that's why it's banned by the state of California from drinking water above this very low level of six parts per billion, which is about a teaspoonful of it dissolved into an Olympic-sized swimming pool full of water. So the gravity of the harm is quite high. We've talked a little bit about the feasibility of the alternative design, and there's a lengthy attack in SQM's brief, of course, on our expert witness on that subject. And as we articulate in our reply brief, it's really not even necessary to get into that. SQM's own witnesses, as well as that patent, show that they had a process where, again, they could have reduced the perchlorate content in the fertilizer by two-thirds, and that would have been good enough to protect the groundwater in the city of Pomona. And, again, SQM, this is also in the record, started reducing the perchlorate concentrations in its fertilizer in response to the injury that those perchlorate concentrations were causing to plants back at the beginning of the 20th century. So, you know, this is hardly a case that fits in the parade of horribles, which was advanced by SQM and its amici as to not having roll cages on stagecoaches or not having seat belts in Model Ts. This technology was available to SQM, and certainly through the testimony of its chairman, SQM attempted to dispute how easy that would have been to reduce the perchlorate concentration that far. But the bottom line is that's an issue for the jury to decide, and there's no way that someone could say that it is likely that the jury would have reached the same result anyway had they applied California law as set forth in Barker and as embodied in the pattern jury instruction. SQM's waiver instruction, I submit, is just flat-out wrong. Pomona did, during the prior appeal to this court, challenge the giving of the risk-benefit instruction, and that's what we're here challenging right now. Pomona's premise seems to be that in order to preserve a jury instruction challenge for future appeals, that all challenges to all formulations of the instruction need to be presented to this court rather than just simply a challenge to the instruction itself. If that were the law, we've been here quite a while today, this court's job would be even bigger and more difficult than it already is because briefs would be larded with all kinds of alternative arguments. This court has made clear that's not necessary, and even if SQM is right about its waiver argument, of course, SQM itself forfeited that argument. SQM didn't argue to the district court prior to the 2018 trial when we made the very same arguments about this at the time the product was in use language that we're making. Right now, hey, that's been waived. Pomona didn't raise that during the last appeal. So the law is clear in multiple circuits, including this one. When that happens, the waiver argument has itself been forfeited. And if there are no more questions at this point, I'll reserve for my rebuttal. Thank you, counsel. May it please the court, R. Gaylord Smith for the defendant, SQM, North America. Counsel on appeal has taken a position that is different than was taken during trial. At trial, counsel never said that the risk of harm to groundwater was unforeseeable or scientifically unknowable. Instead, he made a valiant effort by showing experts that 19 tons of perchlorate was deposited in Pomona, that it would migrate 75 feet down from the root stems in the 1940s. So he was trying to show to the jury that risk of harm dynamic was already in play and that it was, therefore, foreseeable and that it was a risk. It's important to note that... But you're not saying he forfeited a challenge to the jury instruction by how he tried the case. You don't say that in your brief. You say he forfeited it because he didn't raise it in the prior appeal. Oh, I'm not talking about the appellate waiver. I'm talking about whether the... Right now, he's suggesting that this jury instruction has the jury consider only foreseeable risks. Why did you ask to add that language to the pattern instruction? But I didn't ask for the judge to put in foreseeable risks. That's not in there. Why did you ask for the language that's at issue to be added to the pattern instruction? Because Barker allows judges to modify design defect... I'm not asking why the judge did it. I'm asking why you asked for it. Why I asked him for it, because of the great difference in time. Okay, then. Okay, then. Exactly right. Yeah. And the instruction as given to the jury does not say the knowable risk to science. It says... I mean, I got to tell you that that's the way a reasonable person would interpret it. Unless the defendant proves the benefits of the fertilizer design outweigh the risks of the design at the time the product was in use. I think any reasonable person looking at that would interpret it as saying you assess this as of back then. And if a person read it that way, a person would be absolutely in accord with what Barker and Kim say is the precise focus of the... So why does the pattern instruction say something different from that, then? The pattern instruction... Actually, let me ask you a different question. Never mind on that one. So how long does this pattern instruction exist? And I know they don't have the force of law, but how long has it existed? It's been around since I've been around. Say more than 10 years, then. Pardon me? Say more than 10 years, then. Yeah, over 30. One of the things I always wonder about in these situations is, so you guys removed the case to federal court, right? Correct. Okay. And the pattern instruction, which I understand doesn't have the force of law, but it was out there when you removed the case. So if you talk about what's foreseeable, it was foreseeable that this pattern instruction was going to be used. I always wonder why people in this situation remove cases to federal court where we're not really supposed to be fiddling with state law. If you wanted to argue that the laws that existed was wrong, you're supposed to be doing that in state court, aren't you? No, no. The law in California is correct. We removed because of Daubert. You removed why? We removed the case because of Daubert. There's a strong Daubert rule in it. Okay. That's why you removed it. Okay, so you wanted to eliminate some expert testimony. Yes. Okay. But we're happy. Let me talk to the merits of the knowability rule. It is indeed the law that scientifically unknown evidence is not a risk that is chargeable to a defendant in a product's liability case. Kim makes it clear that the inquiry is whether the product was designed as safely as it should have been, given the complexity and tradeoffs implicit in the design process. That's past tense. We've established that you've been around maybe 30 years. I've been around 30 years plus. And, in fact, was in law school at the time Barker came out. Right. And at that time, the California Supreme Court was vastly expanding the scope of liability, product enterprise liability, design defect liability. And, in fact, I think the opinion was written by Matthew Tabriner, the Barker case. And so I think they intended this expansive thing and used the word hindsight with deliberation, just knowing what was going on back then, where the California Supreme Court was. And so that's, I think, the most expansive level of product liability, tort liability that the California Supreme Court has dated. And it's never come back. It's never gone back on that expansive view of manufacturers' liability and weighing the innocent manufacturer versus the innocent injured person. They're going to – their balance was struck that they were going to hold the manufacturer liable. They struck that balance in 76. We've had a pattern instruction in California state law along those lines for forever. And why would anyone not abide by it in this case? I just don't get it. If anybody's been around here practicing – you're from California, right? The more important word is preventable. It says, in hindsight, is there excessive preventable harm? And the word preventable means either one of two things, that the scientifically available knowledge of risk and technology to address risk can be brought to bear objectively on that decision, or preventable is a sham. It's a fiction. We know now in Kim that it's the former, that preventable means that the technology and the science existed. We know that even more because of the state-of-the-art cases. And let me just go right to the main case, which is Ramirez versus Plow. Ramirez is famous as a warnings case, but it also has an important alternative holding that holds that the risk-benefit alternative argument was without merit because the technology and the scientific knowledge did not exist in early 1986 when the child was administered aspirin that allegedly caused Reye's syndrome. And the court held that that was decisive. The technology and the scientific knowledge of the risk was not established. At the time of sale, there was a complete defense in both cases and the court of appeal level before and after that.  Let's take Rosberg, the breast implant case, an important case, a 1986 case. It held that the design benefits outweighed the risk in 1976 when the implants were made, the devices were made. That is strong law that supports that you have to look at the word hindsight. It's not called the hindsight test. It's called the risk-benefit test. And in the risk-benefit test, the risks have to be judged in terms of the standards of the time. We know that because Rosberg says that. Ramirez says that. Bozzi, which is a 2010 case, says that summary judgment was granted because the escalator was state-of-the-art when manufactured. A state-of-the-art when manufactured. Use or manufacture to sell, it makes no difference in terms of who wins this case. A case of tremendous similarity to our case right now are the JCCP proceedings involving trichloropropane cases, the Redlands case in 2014. That's the unpublished opinion. It is unpublished. This court, this circuit follows the rule that unpublished decisions may be considered as indicative of California law. Since it is a contamination case like ours, and it shows the trend of the law to include groundwater contamination cases and the knowability of those risks, just like Ramirez v. Plough, just like Bozzi v. Nordstrom and Rosberg v. 3M. And I'm forgetting McLaughlin v. Korsky Aircraft going back to 1983. That all shows that the trial court was right to focus attention as of the time of sale. Remembering Kim, the court referred to Restatement 2 in footnote 5 as pointing to measuring the risk as of the date of sale or distribution. And the date of sale or distribution is followed in Restatement 3, 2. It's followed by many states. Counsel's reliance upon Montana and Wisconsin cases that don't follow the Restatement and don't follow California law is not very precise. Can I go back to Ramirez a second? So in the reply, the plaintiff says that Ramirez didn't involve a design defect claim. All of the claims were premised on a failure to warrant. That's a serious misstatement of the case. That's wrong, you're saying? This is a serious misstatement of the case. To be fair, and they're clever about this, they say the complaint doesn't allege any risk-benefit case. But on appeal, the plaintiff sought to include a risk-benefit claim. And the Supreme Court agreed to hear it. And they heard it and they decided it. And they ruled against the plaintiff based upon the lack of scientific technology, knowledge of the scientific risk as of the time of purchase. The whole focus of the Kim case, because Kim v. Toyota is much more important than counsel would suggest. The reason that it allows evidence of the custom and practice and it allows evidence of the state of the art, because those both reference points at the time of manufacture. And it is the time of manufacture and only at the time of manufacture that Barker's excessive preventable harm standard can be measured. The purpose of product's liability law is not simply to have absolute liability on the manufacturer. Tobriner never went that far. In fact, he stopped and he says, no, it's strict, it's not absolute, and it's not insurance. The Supreme Court in California in 2016, in the Webb v. Special Electric case, which we cite at page 51, says the goal of product's liability law is not merely to spread risk, but also to induce conduct that is capable of being performed. That is why Ramirez and all these other cases that say that there must be awareness in science of the risk in order for the maker to be liable and product's liability is good law. If you take away the scientific knowability of the risk, you've made this insurance. I want to jump ahead to another issue for just a second, one I know you don't want to talk about, but just in case we get to it. And that's the question of if it has to be sent back, what needs to be retried. So you guys, your side talks about the issue of what, in other words, their argument is just send it back on the one thing, don't send it back for everything. And your argument is that the evidence is intertwined on these various issues. But isn't what the question is, is whether the issues are intertwined. In other words, it's pretty common to have a witness that might talk about multiple things. The plaintiff might talk about the accident, the injury, the damages. The defense witness may talk about more than one thing. But in terms of a retrial, isn't the question whether the issues are interlocked. And my real question here is how are the issues that the plaintiff is saying shouldn't be sent back intertwined with the issues that you agree that in the event of a reversal should be. Well, I do want to talk about it because you raised it. They are intertwined factually. If they're factually intertwined, the case law suggests that the whole thing should be retried. There was a lot of confusion by this jury over these jury instructions. We didn't get the product's identification question that we should have gotten that mirrored the jury instruction. Had we gotten that, it would have been a whole new ballgame. We know that because the jury's first question a few minutes after they departed was are we talking about Proclorate in the United States or are we talking about it in Pomona. Well, the judge should have said in Pomona. That's the plaintiff. That's where the harm was. He refused to do that. That was error. There's a lot of confusion there. Well, so you remember my question, right? So the things that the plaintiff doesn't want to be sent back, I think, is causation and maybe damages. Yeah, and causation relates exactly to what I'm talking about. How is causation intertwined with risk benefit, which is what the jury instructions are? Well, risk benefit is the ballgame in most of these cases. It's the big issue. It expands the entire length of the case from history to present because you have to look at the likelihood of the harm that was actually caused. So if we're retrying risk benefit, it's no shorter trial. That's not what Champlain v. Gasoline Products or whatever it is says. It's not whether the trial is going to be longer or shorter. It's whether the issues are intertwined. Well, I think here there is intertwinedness, if that's a word, on evidentiary matter. Are they legally tied together? I'm not going to stand here and say no because they were separate questions. But generally speaking, in the case law, we do retry it all because you just never know. When you have a case that takes one hour for the jury to decide, did they really vote 7-0 or 8-0 on each of those four questions before they gave us the victory? Or did they find the question that they were all united on and could get a 7-0 vote on and go to that one? And then just go back and fill in the ones just for the heck of it even though they weren't unanimous? There's no other way to do it. I'm sorry. Well, with this. That's just crazy. That's just crazy talk where you assume out of this thing that they jumped to question four because that was the only one they could answer unanimously. And then they went back even though the jury instructions told them they had to be unanimous. And even though the verdict form says answer them in this order, they went back and just filled in the other three just for the heck of it. I mean, honestly, that's pretty disrespectful to how juries work. And I've talked to a lot of them, thousands, over 20 years of being a district judge. I just don't see that kind of stuff. How many cases has the jury been out with so much evidence for one hour? And given the judge several questions, they're showing a lack of understanding as to the first two questions. That's the best I can do, Your Honor, on that one. I want to speak about the waiver issue. That is a real issue. Our case is very much like the Kalita error case that you had before you in 2013 where the instructional error was not raised in the first appeal. The case then was retried. Right, but you didn't make that argument when the instructions were considered in the last time. So isn't there barbature of barbature? Okay, let's talk about waiver of waiver. Let's say it close. In Kalita, that also wasn't raised as an objection in the district court. We know that because the briefs say so. And we have the briefs. You have the briefs. We can provide the briefs to you on appeal. The same issue is made. Waiver takes the purpose of waiver is a fact-intensive inquiry. So if there is conduct like in the Boudreau case in the Sixth Circuit where the government went through a lot of evidentiary rulings and took up a lot of time on revisiting an issue that should have been considered under the first appeal, that can be a waiver. But there was never any doubt that this district court was going to give the same risk-benefit instruction that it did before. That issue should have been raised on the first appeal, particularly when the consumer expectation instruction was challenged. Pomona knew that if it lost that challenge, it would be looking right in the face of the risk-benefit instruction as it had been given before. Yeah, could I have said to the judge, in addition to all the other reasons why you should give the same instruction as you did before, there's this appellate waiver doctrine. That's not going to affect the conduct of the district court judge, I would respectfully submit, at all. What the district court judge, I'm not going to say what district court judges do, but from my point of view, they get the same instructions unless they're told not to. Is there a waiver when there's an idle act, fatal failure by me, to take an idle act, a futile act that would have changed nothing? Let's get to the policy behind the appellate waiver rule. It's really to protect the system from an unnecessary appeal. Had plaintiffs done what they should have done and raised the risk-benefit test the last time, we wouldn't be here now. We would have had a trial, and it would have gone one way or the other on the risk-benefit test, but we wouldn't be here now on that issue. The amount of money, the amount of time that has been incurred as a result of their failure to raise the risk-benefit instruction error in the last appeal is monumental. This court has been strict on that. In Jimenez and Kalita, going back to Munoz involving... I think we're less strict when it's a question of law, and the parties have had an opportunity to brief it, and there's no prejudice. There has been no case where this court has found waiver of waiver. Respectfully, I don't think that's true. Well, none of the cases the plaintiffs cited. The citation to Judge Reinhold's decision was wrong. The USA Petroleum case... I think we routinely find waiver of waiver. It takes some conduct to have waiver. Well, anyway, that's not the most significant issue, and it's fully briefed, and you're over your time, so... Thank you. Thank you very much. I'll give you a minute since counsel went over his time. I thought I had reserved five, but that's okay. Did you reserve five? You used it all, though. Oh, I ended up using it. I apologize, then. We've been at this for a while. If you had actually reserved your five, you would have five. Okay. Thank you, Your Honor. So I take Your Honor's comments about the waiver issue. All I'll say is it sounds like SQM wants to hold Pomona to a standard that it doesn't want to be held to. There's no good answer about why it didn't raise it in the district court this last time, other than you can't raise too many issues in the district court. Did the same issue get hashed out in the first trial, too? In other words, did the same objection get made to the same instruction? Well, yes, the objection was made to that instruction. I mean in the district court. Yes, and the last appeal to this court was about the causation issue because... No, no, no, I get that. I'm just saying that the first trial, did the district judge use this exact same instruction with the same allegedly offended... In fact, it was not exactly the same, for whatever that's worth. Okay. Used it once rather than twice or something like that. In substance, yes. In substance, it was similar. But again, I'll just say that the jury never reached this question at the 2015 trial because there was causation evidence that was kept from the jury. So even by challenging the risk-benefit instruction at all, we were presenting potentially just a hypothetical question to this court, and this court's not a fan of answering hypothetical questions. It ended up answering that question. Mr. Smith is flat-out wrong when he says that. Had we raised that last time, it would have been decided. Again, it's just, and this court has repeatedly said this, there's no necessity to raise all possible layers of argument when you're challenging a jury instruction. We challenged the giving of this instruction last time. Kalita Ayer says nothing to the contrary. I haven't looked at the briefs in Kalita Ayer. I've read the opinion in Kalita Ayer. Kalita Ayer doesn't say that there was any waiver of waiver. Kalita Ayer doesn't say that there was any challenge at all to the jury instructions on the prior appeal. Kalita Ayer is just not very informative here. And all I'll say on the merits at this point is, Mr. Smith said that if you take away scientific knowability of risk, you don't have what you would have would be absolute liability. No. In fact, what you have, if you don't require the plaintiff to prove scientific knowability of risk, is strict liability. And if you're requiring the plaintiff to prove scientific knowability of risk, you have negligence. California invented strict products liability. California follows strict products liability. California has not deviated from strict products liability. And federal courts are not the place to get changes to California law. The California courts don't follow Section 2 of the Restatement, which is proven unusually unpopular among the high courts of other states. But this isn't the high court of California. It's the Ninth Circuit Court of Appeals. California law should be followed here. It should have been followed in the district court. It shouldn't be changed. Thank you. Thank you, counsel. City of Pomona v. SQM North America Corporation is submitted, and the session of this court is adjourned for today. Thank you. All rise. This court for this session is now adjourned.
judges: Wardlaw, Kennelly, Lee